AO106(Rev.5/85) Affidavit for Search Warrant

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

In the Matter of the Search of
(Name, address or brief description of person, property, or premises to be searched)

XXX XXXXXX XX
Washington DC

## APPLICATION AND AFFIDAVIT
## FOR SEARCH WARRANT

CASE NUMBER:

(Further described below)

I   Todd Brackhahn, Special Agent   being duly sworn depose and say:

I am a(n)   Special Agent with the Drug Enforcement Administration   and have reason to believe
(Official Title)

that (name, description and or location)
**XXX XXXXXXX XX XX; Washington, DC; See Attached Affidavit**

in the District of Columbia, there is now concealed a certain person or property, namely (describe the person or property to be searched)

**See Attached Affidavit**

which is (state one or more bases for search and seizure set forth under Rule 41(c) of the Federal Rules of Criminal Procedure)

concerning a violation of Title  21 U.S.C  United States Code, Section(s)  § 841(a)(1) and § 846 . The facts to support a finding of Probable Cause are as follows:

SEE ATTACHED AFFIDAVIT HEREIN INCORPORATED BY REFERENCE AS IF FULLY RESTATED HEREIN

Continued on the attached sheet and made a part hereof.    X  YES    ☐  NO

Elisa S. Poteat
Criminal Division/OCNT
(202)202-514-7067

Signature of Affiant
,

Sworn to before me, and subscribed in my presence

_____          at Washington, D.C.
Date

_____          _____
Name and Title of Judicial Officer                                    Signature of Judicial Officer

**AFFIDAVIT FOR SEARCH WARRANT FOR
314 NICHOLSON NW, WASHINGTON DC**

I, Todd Brackhahn, Special Agent with the Drug Enforcement Administration (DEA), being duly sworn, state as follows:

I am an investigative or law enforcement officer of the United States within the meaning of Section 2510 (7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in section 2516 of Title 18, United States Code. I, Todd Brackhahn, am a duly sworn Special Agent with the U.S. Department of Justice, Drug Enforcement Administration.

1. I have over sixteen years of law enforcement experience. I have been employed with the DEA since January 1, 2004 as a Special Agent. I have thirteen years of prior law enforcement experience in the State of Texas; three years with the City of Carrollton, Texas as a Municipal Police Officer, and ten years with the Texas Department of Public Safety as a Texas State Trooper. While performing my duties as a Texas Peace Officer, I received training and conducted numerous investigations related to the overland transportation of illicit narcotics throughout the United States. As a result I have seized over thousands of pounds of narcotics, millions of dollars in United States currency, and arrested numerous violators. Since my enlistment with DEA, I have received training and conducted or assisted in numerous federal narcotics investigations. Based on my training, personal experience, participation in said criminal investigations, and the collective experience of other law enforcement officers that I work with, I have become familiar with the methods and techniques used by individuals engaged in narcotics trafficking.

2. Based on my prior training and experience, I have observed that narcotics traffickers keep and use cellular telephones and the technology associated with this type of equipment as a primary means of communication in order to conduct their narcotics trafficking business. Additionally, narcotics traffickers commonly maintain telephone numbers and address books or papers which reflect names, addresses and/or telephone numbers for their associates. These telephone records, bills, and pager numbers are often found in their place of residence, or in the residences of family members, friends or associates, business locations, or in the places from which they conduct their distribution activities. Narcotics traffickers keep and use co-conspirators addresses and telephone numbers in the memory of cellular telephone devices and other personal organizer type electronic devices in order to facilitate their illegal narcotics activities. Additionally narcotics traffickers utilize voicemail messaging and text messaging services provided by cellular telephone companies systems to send and receive instructions, directions, and the results of illicit narcotics related activities to other coconspirators involved in said activities. Narcotics traffickers also use numerous cellular telephones to communicate with co-conspirators in order to confuse the efforts of law enforcement.

3. Narcotics traffickers maintain books, records, receipts, notes, ledgers, bank records, money orders and other papers relating to the importation, manufacture, transportation, ordering, sale and distribution of illegal controlled substances. These books, records, receipts, notes, bank records, etc., are maintained in locations to which the dealer in illegal controlled substances have ready access, such as in secure locations within their residences and surrounding curtilage; residences of family members, friends and associates; places in which they conduct their drug distribution activities, such as stash houses or safe houses; in business locations with which the trafficker is associated; or in storage areas.

4. Narcotics traffickers keep and utilize computers and other electronic devices for the purpose of maintaining records, receipts, notes, ledgers, bank records, money orders and other documents or records relating to the importation, manufacture, transportation, ordering, sale and distribution of illegal controlled substances. Additionally, narcotics traffickers utilize computers and other electronic devices as a means of communication, ie. the internet, in order to conduct their narcotics trafficking business. Narcotics traffickers commonly maintain telephone numbers and address books or documents which reflect names, addresses and/or telephone numbers of their associates. These computers and other electronic devices are maintained in locations to which narcotics traffickers have ready access, such as in secure locations within their residences and surrounding curtilage; residences of family members, friends and associates; places in which they conduct their drug distribution activities, such as stash houses or safe houses; in business locations with which the trafficker is associated, or in storage areas.

5. Narcotics traffickers routinely conceal large quantities of currency, financial instruments, precious metals, jewelry and other items of value, typically proceeds of illegal controlled substance transactions. These items are generally found in their residences and/or surrounding curtilage, residences of family members, friends and associates, as well as their business locations, storage areas, and/or in places from which they conduct their distribution activities.

6. It is common for narcotics traffickers to secrete contraband related to their trafficking activity, such as scales, razors, packaging materials, cutting agents, cooking utensils, microwave ovens, hair dryers, blenders, pots, dishes, and other containers for preparing cocaine base, cocaine and other controlled substances for distribution, at their residence, or in the places from which they conduct their drug distribution activities.

7. Narcotics traffickers often take photographs of themselves, their associates, their property and illegal contraband. These photographs are usually maintained in their place of residence, or residences of family members, friends or associates, business locations, or in places from which they conduct their distribution activities.

8. Narcotics traffickers maintain documents, letters and records relating to their illegal activities for long periods of time. This documentary evidence is usually secreted in their place of residence, or residences of family members, friends or associates, in business locations, or in places from which they conduct drug distribution activities. This documentary evidence

includes, but is not limited to, telephone numbers, telephone books, address books, credit card and hotel receipts, plane and bus tickets, car rental receipts, records in fictitious names, false identification, money orders, cashiers checks relating to cash transactions, and records indicating the existence of storage facilities used in narcotics trafficking.

9. Narcotics traffickers often own, possess and/or use weapons as a means of facilitating their illegal drug activities. Such weapons are most often secreted in their residences to include surrounding curtilage, or residences of family members, friends or associates, in business locations, or in the places from which they conduct drug distribution activities, such as stash houses or safe houses. These individuals also often possess ammunition and other items pertaining to the possession of firearms, including gun cases, ammunition magazines, holsters, spare parts for firearms, firearms cleaning equipment, photographs of firearms or of persons in possession of firearms, and receipts for the purchase and/or repair of all these items.

10. Based on the investigation described below, I believe that there is probable cause that there is secreted within the residence of XXX XXXXXXXXXXX XX, Washington DC, documents / instruments which reveal narcotics trafficking activities including but not limited to, cellular telephones, telephone numbers, telephone books, address books, and/or papers which reflect names, addresses and/or telephone numbers of criminal associates. Books, records, receipts, notes, ledgers, bank records, money orders, credit card and hotel receipts, plane and bus tickets, car rental receipts and other papers, money orders, cashiers checks relating to cash transactions. False identification(s), records in fictitious names, records indicating the existence of storage facilities used in narcotics trafficking, records of front businesses used to launder the proceeds of narcotics transactions. Computers and other electronic devices, large quantities of currency, financial instruments, precious metals, jewelry and other items of value which are the proceeds of illegal controlled substance transactions. Contraband related to trafficking activity, such as scales, packaging materials, tools utilized to access hidden compartments, photographs of themselves, and associates, their property, and illegal contraband. Documents, letters and records. Two-way radio equipment, scanners, night vision, and weapons all of which relate to importing, manufacturing, transporting, ordering, selling and distributing illegal controlled substances, and other evidence of illegal narcotics trafficking which is a federal offense. Specific offenses include possession with intent to distribute and the distribution of a controlled substance, in violation of 21 U.S.C. § 841(a)(1); conspiracy to commit such offenses, in violation of 21 U.S.C. § 846 and, money laundering in violation of 18 USC § 1956, and 1957. Since this affidavit is being submitted for the limited purpose of establishing probable cause, your Affiant has not included each and every fact known regarding the instant investigation. More specifically, your Affiant has set forth only pertinent facts set forth that your Affiant believes are necessary to establish probable cause.

11. The location to be searched is described as: an attached town home, three-story residence with red brick veneer, a dark colored shingle pitched roof, a front door covered by a white wrought iron screen door, white trim, white gutters, and white shutters. The location to be searched has a metal chain link fence around the back of the house. The location to be

    searched is located at XXX XXXXXXXXXXX XX, Washington, DC and is identified by the following numerals, **314**, which are black on a white background located on the side of the residence facing Nicholson, to the right of the described front door. The location to be searched includes all outbuildings and vehicles on the premises.

12. On or about April 9, 2008, law enforcement officers arrested Eugene Medley in Loudoun County, Virginia, based upon evidence obtained during an ongoing DEA investigation for his involvement in the distribution of controlled substances and the conspiracy to distribute controlled substances in violation of 21U.S.C. §§841(a)(1), and 846.

13. Medley was arrested in his 2003 Chevrolet Monte Carlo. Pursuant to Medley's arrest and the subsequent search of his vehicle law enforcement found a loaded .25 caliber semiautomatic handgun and approximately four ounces of suspected marijuana. Based on your affiants training and experience, this marijuana was packaged for distribution. The marijuana was packaged in small baggies, and with the marijuana was found a digital scale and additional baggies. A shotgun shell was found in the bag containing the marijuana.

14. After arrest and before questioning, your affiant advised Medley of his constitutional rights. He acknowledged he understood those rights, waived them, and agreed to answer questions. Medley stated that he distributed marijuana and had sold MDMA in the past. Medley estimated he sold MDMA from approximately November 2006, through July 2007, until people tried to rob him in his home, presumably to get his drugs or drug proceeds. Medley stated he got out of the MDMA business because he believed it was too dangerous after that. Medley stated that he always carried a firearm with him for his protection when selling drugs. Medley also stated that he used his cellular telephone to conduct drug transactions and that he had obtained one telephone in the name of his girlfriend and a second telephone in a false name to help conceal his identity from law enforcement. Medley stated that the cellular telephone he obtained in a false name was located inside 314 Nicholson Street NW, Washington DC.

15. During questioning Medley initially provided a Beltsville, Maryland, address as his residence. When your affiant confronted Medley and advised that he knew he was not residing at that address, Medley confirmed he was in fact residing with his girlfriend, Sherelle Holder and her family in Washington, DC. Medley advised that the phone number at the residence is 202-629-1014. Medley stated that he occupies a room in that residence. Medley stated that, within the room, he possesses a shotgun and a quantity of cash. Medley stated he possesses the shotgun for his protection. Although Medley first claimed this money was from his employment, he subsequently confirmed the cash was proceeds of his drug trafficking activities.

16. Through the use of a commercial databases your affiant was able to confirm that Sherelle Holder is a residence of XXX XXXXXXXX XXXXX, NW, Washington, DC, with a listed telephone number of 202-629-1014.

17. It is the belief of your Affiant that there is secreted on and/in the premises located at XXX XXXXXXXXXXX XX, Washington, DC, property, documents, and other instruments which constitute evidence of the criminal offense of Conspiracy to Possess With Intent to Distribute a Controlled Substance in violation of 21 U.S.C. §§ 841(a)(1) and 846, and conspiracy to commit money laundering in violation of 18 U.S.C. §§ 1956, and 1957.

18. Based on the information set forth in this affidavit, your Affiant asks that the Court order the requested search warrant to be issued.

                _____
                Todd Brackhahn, Special Agent
                Drug Enforcement Administration

Sworn to and subscribed to before me this 10th day of April, 2008.

                _____
                Alan Kay
                United States Magistrate Judge